**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
MELANIE YOUNG,

                    Plaintiff,                **MEMORANDUM OF**
                                                       **DECISION & ORDER**
                -against-                   13-cv-4713 (ADS)(ARL)

TOWN OF ISLIP, ELIZABETH LORENZ,
*in her personal and official capacity,* CAROL
CHARCHALIS, *in her personal and official
capacity,* and ROBERT FINNEGAN*, in his
personal and official capacity*

                    Defendants.
----------------------------------------------------------X

**APPEARANCES:**
**Law Offices of Frederick K. Brewington**
*Attorneys for the Plaintiff*
556 Peninsula Boulevard
Hempstead, NY 11550
        By:     Frederick K. Brewington, Esq., Of Counsel

**William D. Wexler, Esq.**
*Attorney for the Defendants*
816 Deer Park Avenue
North Babylon, NY 11703
        By:     William D. Wexler, Esq., Of Counsel

**SPATT, District Judge:**

On February 23, 2017, a jury found that the Plaintiff Melanie Young (the "Plaintiff") did not prove, by a preponderance of the evidence, that the Defendants Town of Islip ("Islip"), Elizabeth Lorenz ("Lorenz"), Carol Charchalis ("Charchalis"), and Robert Finnegan ("Finnegan") (collectively, the "Defendants") discriminated against her on the basis of her race, or that they retaliated against her because of her complaints of discrimination. The Plaintiff's claims were brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), 42 U.S.C. § 1983 ("Section 1983"), 42 U.S.C. § 1981 ("Section 1981"), the New

1

York State Human Rights Law, N.Y. EXEC. LAW § 296 (the "NYSHRL"), and the Suffolk County Human Rights Law (the "SCHRL").

Presently before the Court is a motion by the Plaintiff for a new trial pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P." or "Rule") 59(a). Specifically, the Plaintiff argues that the Court erred in its charge to the jury on what incidents could be considered materially adverse employment actions in the context of the Plaintiff's retaliation and discrimination claims.

For the following reasons, the Plaintiff's motion is granted in part, and denied in part.

## I. BACKGROUND

### A. The Relevant Facts

The Court will not engage in a complete recitation of the facts adduced at the trial, just a discussion of those that are relevant to the Plaintiff's instant motion.

Between April 21, 2008, and December 31, 2013, the Plaintiff worked for the Town of Islip. During that time, she worked in two offices: the Commissioner of Human Services for the Town of Islip, and the Office of the Supervisor. Her respective titles in those two departments were Executive Assistant to Management Staff/Acting Director of Human Development, and Americans with Disabilities Act ("ADA") Compliance Specialist.

The Plaintiff alleged that she was terminated from her position as ADA Compliance Specialist due to discrimination based on her race, as well as retaliation based on her numerous complaints of discrimination. The Plaintiff complained verbally and in writing in February 2009, the spring of 2009, and October 2009 that she believed that she was the subject of discrimination. In February 2009, she told the chief of staff to the Town supervisor that she was being subjected to discriminatory treatment and a hostile work environment (Tr. at 139–40). On April 2, 2010, she filed a notice of claim with the Town of Islip of her intent to bring discrimination charges. (Pl.'s

2

Ex. 461). On February 11, 2011, she filed a complaint with the New York State Division of Human Rights (the "NYSDHR"). (Pl.'s Ex 57).

As stated above, the Plaintiff moves for a new trial on the ground that the Court erred in charging the jury that the only materially adverse employment action was the Plaintiff's termination.

During the charging conference, the Plaintiff objected to the Plaintiff's termination being the only materially adverse employment action in the retaliation context. The following conversation occurred:

> MR. BREWINGTON: You say in those charges, including going back to five [the retaliation cause of action], you say "based on alleged discrimination and the decision to discharge her." Is it the decision, or is it leading to her discharge?
> THE COURT: No. I think that it's a decision. I don't know how it could be leading to her. This is retaliation. The claim is that because she made prior complaints she was discharged.
> MR. BREWINGTON: That's the ultimate.
> THE COURT: Yes.
> MR. BREWINGTON: That's the ultimate. But the claim is that the retaliation came in other forms, that the retaliation came in the over documentation, the charges, the other actions. The retaliation itself does not have to be a single act. And that's my concern. I was raising that the other –
> THE COURT: I understand it was a single act.
> MR. BREWINGTON: I know. It doesn't have to--and it shouldn't-- in this situation our argument has been that she was discharged, and that was the ultimate action of retaliation after she filed her complaints. But all of the things leading up to that were actions of retaliation for which the defendants are responsible.
> THE COURT: No way. They're responsible for discharging her. There is not interim retaliation. There's no cause of action for interim retaliation in this case.
> MR. BREWINGTON: Judge, each act of retaliation -- just so the record can be heard out, each act of retaliation itself is actionable, just like each action of discrimination.
> THE COURT: Actionable do what?
> MR. BREWINGTON: It's actionable -- because even though it may not have caused her the financial impact of termination, each one of them caused her emotional distress along the way. And that--and, Judge, I'm just asking you, and I know you have your verdict sheet, but I think by telling this jury that the retaliation can only be found if you're saying no matter what else they did, got an end in her termination, the termination is a factor from retaliation. But the retaliation are acts that occurred along the way, including things relating-

> THE COURT: Can you imagine if I gave that to the jury what a mess this would be? That's not the law either. The law is there has to be a final act, which the retaliation cautioned, not minor dispute, not aggravation, but something important happened. Major, major.
> No. I'm leaving it this way. You have an exception.

(Tr. at 2300–03).

In its charge to the jury, the Court identified the Plaintiff's discharge as the only materially adverse employment action for their consideration of the Plaintiff's discrimination and retaliation claims. (Tr. at 2478 (discrimination charge), 2487–88 (retaliation charge); Ct. Ex. 8 (verdict sheet) at 1 ("Based on all of the evidence presented did the plaintiff Melanie Young prove that her race was a motivating factor for the decision by the Town of Islip to discharge her?"); *id.* at 4 ("Did the plaintiff Melanie Young prove that there was a causal connection between the prior complaints based on alleged racial discrimination and the decision to discharge her?")).

During trial, the Plaintiff introduced evidence of other allegedly adverse employment actions. The Plaintiff was written up numerous times for insubordination and for being late. (*See, e.g.,* Pl.'s Exs. 524, 526, 545, 548, 550, 566). In January 2010, the Plaintiff was relieved of her responsibilities regarding the planning of a Black History Month event. On March 15, 2010, the Plaintiff was sent home without pay. (Pl.'s Ex. 77). On April 14, 2010, the Plaintiff was written up for failing to comply with town codes. (Pl.'s Exs. 184, 310). The Plaintiff lost access to the GPS monitoring of certain vans which she claimed she needed to perform her job. (Tr. at 272–75, Pl.'s Ex. 179). When the Plaintiff took medical leave in the summer and fall of 2010, she testified that the Defendants discussed her personal medical issues with her staff members. (Tr. at 283–84). The Plaintiff also testified that the Defendants did not credit her with her full FMLA leave in the fall and winter of 2010.

## B. Relevant Procedural History

On February 23, 2017, after a three-week trial, the jury found that Plaintiff did not prove, by a preponderance of the evidence, that the Defendants were motivated by racial or retaliatory animus when they fired the Plaintiff in violation of Title VII, Section 1981, Section 1983, the NYSHRL, or the SCHRL. The jury also found that the Plaintiff did not prove, by a preponderance of the evidence, that the individual Defendants violated her equal protection rights in contravention of Section 1983. While the jury found that the Plaintiff did not meet her burden in demonstrating that the Defendants Charchalis and Lorenz violated the FMLA, the jury found that the Plaintiff did meet her burden in proving that the Defendants Islip and Finnegan violated the FLMA. Also, while the jury found that the Plaintiff did not meet her burden in demonstrating that she was subjected to racial discrimination and/or retaliatory treatment as a result of an official custom or policy on the part of the Defendant Islip, the jury was unable to reach a unanimous verdict on the Plaintiff's Section 1983 *Monell* claim based on Islip's alleged failure to train its employees. Finally, the jury found that the Plaintiff did not prove, by a preponderance of the evidence, that she was subjected to a hostile work environment in violation of Title VII, the NYSHRL, the SCHRL, Section 1981 and Section 1983.

On April 13, 2017, the Plaintiff filed the instant motion for a new trial on her Title VII, Section 1981, Section 1983, NYSHRL, and SCHRL claims.

## II. DISCUSSION

## A. The Relevant Legal Standard

Rule 59 provides that "[t]he court may, on motion, grant a new trial on all or some issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court[.]" FED. R. CIV. P. 59(a).

"Erroneous or inadequate jury instructions may constitute grounds for a new trial, provided the errors are 'prejudicial in light of the charge as a whole.'" *Graham v. City of N.Y.*, 128 F. Supp. 3d 681, 709 (E.D.N.Y. 2015) (quoting *Lore v. City of Syracuse*, 670 F.3d 127, 156 (2d Cir. 2012)).

An erroneous jury instruction "misleads the jury as to the correct legal standard or does not adequately inform the jury on the law." *Lore*, 670 F.3d at 156 (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 153 (2d Cir. 1997)); *see also Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 152 (2d Cir. 2014); *Worytko v. Cty. of Suffolk,* 285 F. App'x 794, 795 (2d Cir. 2008) ("Where the court's instruction misleads the jury as to the correct legal standard or where it fails to adequately inform the jury on the law, it will be deemed erroneous. An erroneous jury instruction mandates a new trial unless the error is harmless." (quoting *Cobb v. Pozzi,* 363 F.3d 89, 112 (2d Cir. 2004))). An error in a jury instruction is not prejudicial "when [the court is] persuaded it did not influence the jury's verdict." *Townsend v. Benjamin Enters., Inc.,* 679 F.3d 41, 56 (2d Cir. 2012). "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Lore,* 670 F.3d at 156 (quoting *Henderson v. Kibbe,* 431 U.S. 145, 155, 97 S. Ct. 1730, 52 L. Ed. 2d 203 (1977)). A new trial is not warranted if the instructions "read as a whole, presented the issues to the jury in a fair and evenhanded manner." *Turley,* 774 F.3d at 152 (quoting *Lore,* 670 F.3d at 156).

## B. The Relevant Law

### 1. Materially Adverse Employment Actions in the Discrimination Context

Materially adverse employment actions in the discrimination context must change the terms and conditions of employment. *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015) ("A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment." (quoting *Galabya v. N.Y.C.*

*Bd. of Educ.,* 202 F.3d 636, 640 (2d Cir. 2000)). "Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Id.*

Discrimination claims brought pursuant to Section 1981, Section 1983, and the NYSHRL are analyzed under the same standards as under Title VII. *See Vill. of Freeport v. Barrella*, 814 F.3d 594, 607 (2d Cir. 2016) ("[W]e analyze claims of racial discrimination identically under Title VII and § 1981 . . . ."); *Vega*, 801 F.3d at 88 ("Once the color of law requirement is met, a plaintiff's equal protection claim parallels h[er] Title VII claim . . . ."); *Salamon v. Our Lady of Victory Hosp.,* 514 F.3d 217, 226 fn. 9 (2d Cir. 2008) (We treat Title VII and [the NYSHRL] discrimination claims as analytically identical, applying the same standards of proof to both claims."). However, the Court notes that in charging the jury in this case on the Plaintiff's Section 1983 equal protection claim, the Court did not confine the jury's consideration to the Plaintiff's termination. Instead, the Court asked the jury to consider whether the Plaintiff was treated differently from other similarly situated individuals during the course of her employment. (Tr. at 2501–06). That is, the jury considered the totality of the circumstances of the Plaintiff's employment.

The Court also notes that while it charged the jury that the same standards apply to the SCHRL, it appears that the SCHRL does not afford a private right of action. *See Gerardi v. Huntington Union Free Sch. Dist.*, 124 F. Supp. 3d 206, 230 (E.D.N.Y. 2015) ("The Court has [] been unable to identify any provision of the SCHRL that allegedly gives the Plaintiff a private right of action." (citing *Broomer v. Huntington Union Free Sch. Dist.,* No. 12 CV 574(DRH)(AKT), 2013 WL 4094924, at *7 (E.D.N.Y. Aug. 13, 2013)).

7

## 2. Materially Adverse Employment Actions in the Retaliation Context

In *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006), the Supreme Court clarified a plaintiff's burden in demonstrating whether an employment action was materially adverse in the retaliation context. The Court held that "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68, 126 S. Ct. at 2415 (internal citations and quotation marks omitted); *see also Kessler v. Westchester Cty. Dep't of Soc. Servs.,* 461 F.3d 199, 207 (2d Cir. 2006) (noting that *Burlington N.* announced a different standard of material adversity than that previously employed in this Circuit in, for example, *Williams v. R.H. Donnelley, Corp.,* 368 F.3d 123, 128 (2d Cir. 2004)).

However, the Supreme Court reiterated that "those petty slights or minor annoyances that often take place at work and that all employees experience" are not materially adverse. *Id.* at 68; *see also id.* ("We speak of *material* adversity because we believe it is important to separate significant from trivial harms. Title VII, we have said, does not set forth a general civility code for the American workplace." (internal citations and quotation marks omitted)). Said differently, "[t]he requirement of a materially adverse employment action reflects the principle that 'Title VII does not protect an employee from all retaliation, but only retaliation that produces an injury or harm.'" *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 24–25 (2d Cir. 2014) (quoting *Tepperwien v. Entergy Nuclear Operations, Inc.,* 663 F.3d 556, 569 (2d Cir. 2011)).

The Supreme Court in *Burlingon N.* also directly addressed the difference between materially adverse employment actions in the discrimination and retaliation contexts:

> Title VII's substantive provision and its antiretaliation provision are not coterminous. The scope of the antiretaliation provision extends beyond workplace-

> related or employment-related retaliatory acts and harm. We therefore reject the standards applied in the Courts of Appeals that have treated the antiretaliation provision as forbidding the same conduct prohibited by the antidiscrimination provision and that have limited actionable retaliation to so-called "ultimate employment decisions."

548 U.S. at 67.

Therefore, "the anti-retaliation provision of Title VII, unlike Title VII's substantive provision, is *not* limited to discriminatory actions that affect the terms and conditions of employment." *Kessler,* 461 F.3d at 207 (citing *Burlington N.,* 548 U.S. at 64 (alterations and internal quotation marks omitted; emphasis in original)).

Relevant here, "in determining whether conduct amounts to an adverse employment action, the alleged acts of retaliation need to be considered both separately and in the aggregate, as even minor acts of retaliation can be sufficiently 'substantial in gross' as to be actionable." *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010) (citing *Zelnik v. Fashion Inst. of Tech.,* 464 F.3d 217, 227 (2d Cir. 2006) ("[T]his ridicule was considered a part of a larger campaign of harassment which though trivial in detail may have been substantial in gross, and therefore was actionable." (internal quotation marks omitted))).

NYSHRL retaliation claims are generally governed by the same standards as Title VII claims. *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 609 (2d Cir. 2006).

Again, as stated above, although the Court charged the jury that SCHRL retaliation claims are analyzed in the same way as Title VII claims, it appears that the SCHRL does not afford a private right of action. *See Gerardi*, 124 F. Supp. 3d at 230 (citing *Broomer*, 2013 WL 4094924, at *7).

## C. Application to the Facts

The Court finds that it did err in the charges submitted to the jury on the Plaintiff's retaliation claims. As stated above, an adverse employment action in the retaliation context is something that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N.*, 548 U.S. at 68. Furthermore, alleged acts of retaliation need to be considered both separately and in the aggregate. *Hicks*, 593 F.3d at 165.

In this case, the Court did not permit the jury to consider whether the actions taken against the Plaintiff in the aggregate might have dissuaded her from supporting her charges of discrimination. The Plaintiff introduced evidence that she was given written reprimands; was sent home without pay on one occasion; had a reduction in responsibilities; did not receive information vital to her job performance; and lost her health insurance earlier than she should have.

Several of these have been held by courts to be sufficient on their own as materially adverse employment actions. *See Kessler,* 461 F.3d at 205 (stating that discipline, suspension, being written up, or issued an unsatisfactory evaluation are traditional indices of adverse employment action amounting to retaliation); *Mitchell v. SUNY Upstate Med. Univ.*, 243 F. Supp. 3d 255, 279 (N.D.N.Y. 2017) (collecting cases stating that unpaid suspension constitutes adverse employment action in the retaliation context); *Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 227 (E.D.N.Y. 2014) (collecting cases that stand for the proposition that a write up, "even when the letter does not directly or immediately result in any loss of wages or benefits, and does not remain in the employment file permanently," is an adverse employment action for the purposes of a retaliation claim); *St. Juste v. Metro Plus Health Plan*, 8 F. Supp. 3d 287, 326 (E.D.N.Y. 2014) (holding that an employer's requirement that an employee take unpaid leave instead of receiving benefits due was an adverse employment action in the retaliation context); *see also Collazo v. Cty.*

*of Suffolk*, 163 F. Supp. 3d 27, 53 (E.D.N.Y. 2016) (finding that the plaintiff "raised triable issues of fact as to whether the withholding of documents, stripping of responsibilities, hostility, assignment to an isolated cubicle, failure to receive a multiline telephone, and malfunctioning security badge constitute adverse actions" for the purposes of her retaliation claim).

Some of the complained of activities have been found to be insufficient by other courts. *Mitchell*, 243 F. Supp. at 255, 285–86 (stating that, even in the retaliation context, "[e]xcessive scrutiny, criticism, and negative evaluation of an employee's work are not materially adverse employment actions unless such conduct is accompanied by negative consequences, such as demotion, diminution of wages, or other tangible loss." (internal citations and quotation marks omitted)); *Jaeger v. N. Babylon Union Free Sch. Dist.*, 191 F. Supp. 3d 215, 235 (E.D.N.Y. 2016) ("[T]he caselaw does not support the conclusion that Principal Klomp's monitoring of Jaeger's attendance, even if it differed from the scrutiny given to his colleagues, is sufficient to constitute an adverse employment action.").

Therefore, in view of the cases cited above, instead of merely asking the jury whether retaliation was the but-for cause of the Plaintiff's termination, the Court should have asked the jury to also consider whether retaliation was the but for cause of the other aggregated alleged adverse employment actions taken against the Plaintiff.

However, the Court does not find that it so erred in its discrimination charge. As stated above, the standard for a materially adverse employment action in the discrimination context is more stringent that that in the retaliation context. That is, a materially adverse employment action must change the terms and conditions of the plaintiff's employment. *Vega*, 801 F.3d at 85. None of the other adverse employment actions complained of by the Plaintiff changed the conditions of her employment. See *Bowen-Hooks*, 13 F. Supp. 3d at 212 (stating that in the discrimination

11

context, "courts in this circuit have found that reprimands, threats of disciplinary action and excessive scrutiny do not constitute adverse employment actions in the absence of other negative results such as a decrease in pay or being placed on probation" (quoting *Uddin v. City of New York,* 427 F. Supp. 2d 414, 429 (S.D.N.Y. 2006)); *see also Wharton v. Cty. of Nassau,* No. 10–CV–0265, 2013 WL 4851713, at *8 (E.D.N.Y. Sept. 10, 2013) ("[O]ral and written warnings do not amount to materially adverse conduct." (quoting *Chang v. Safe Horizons,* 254 F. App'x 838, 839 (2d Cir. 2007))).

While it is true that courts in this circuit have instructed juries to consider employment actions in the aggregate in the discrimination context, *see Olsen v. Cty. of Nassau*, 615 F. Supp. 2d 35, 41–42 (E.D.N.Y. 2009) (collecting cases), the Second Circuit has not ruled on the validity of such an interpretation of the statute and case law, *id.* In *Olsen*, the Court had charged the jury that they could consider the adverse employment actions in the aggregate when determining whether they were material. *Id.* at 40–41. In determining a motion for a new trial filed by the defendants, the *Olsen* court held that it was not error to allow the jury to consider the adverse employment actions in the aggregate. *Id.* at 42–43. *Olsen*, as well as three of the cases cited in *Olsen*, relied upon the Second Circuit's decision in *Phillips v. Bowen*, 278 F.3d 103 (2d Cir. 2002), which was a case concerning First Amendment retaliation. In *Phillips*, the Second Circuit implied that lesser employment actions added together could constitute materially adverse employment action in the First Amendment context. This Court does not agree with the reasoning of *Olsen* or the cases cited by *Olsen* because *Phillips* is inapplicable here. The "standard for First Amendment retaliation claims has always been the equivalent to the standard set forth in *Burlington N.*" *Zelnik*, 464 at 227. That is, the First Amendment retaliation standard is more similar to the Title VII retaliation standard than the Title VII discrimination standard. As stated above, the Title VII

12

discrimination standard is more stringent. Therefore, in the absence of direct guidance from the Second Circuit on the issue, the Court declines to follow the reasoning of *Olsen* and finds that it did not commit error when it declined to charge the jury to consider the other employment actions in the aggregate for her discrimination claims.

Nevertheless, even if the Court were to consider the adverse employment actions in the aggregate, the Court finds that they were not material. That is because actions that did not affect the terms of the Plaintiff's employment individually, and similarly, did not affect the terms of her employment in the aggregate. *See, e.g., Tepperwien*, 663 F.3d at 572 ("Individually the actions were trivial, and placed in context they remain trivial. Taken in the aggregate, the actions still did not adversely affect [the plaintiff] in any material way. Zero plus zero is zero." (citing, *inter alia*, *Gorence v. Eagle Food Ctrs., Inc.,* 242 F.3d 759, 763 (7th Cir. 2001) ("And it is simply not true, we want to emphasize, that if a litigant presents an overload of irrelevant or nonprobative facts, somehow the irrelevances will add up to relevant evidence of discriminatory intent. They do not; zero plus zero is zero." (further citations and quotation marks omitted)))).

Furthermore, even if the Court erred in not instructing the jury to consider the actions in the aggregate, the error is harmless. First, on the Plaintiff's Title VII discrimination claim, the Court instructed the jury to consider "any evidence of [discriminatory] intent that may be available from the evidence that has been presented by both sides." (Tr. at 2479). More importantly, the Plaintiff's argument is essentially that although the jury found that the Defendants were not motivated by discriminatory animus when they terminated her, they were motivated by that animus when they documented her alleged insubordination; "berated" her in front of staff; took away her planning of Black History Month; and failed to investigate her claims of discrimination.

The Court does not agree with the Plaintiff's argument. Surely, if the Defendants were motivated by discrimination in all of the other actions taken against the Plaintiff, the jury would have found that the Defendants were so motivated when they terminated the Plaintiff. Instead, the jury found that the Plaintiff did not prove, by a preponderance of the evidence, that the Defendants were motivated by a racial animus when they terminated the Plaintiff. Furthermore, when the jury took the totality of circumstances into account, it found that the Plaintiff had not met her burden in proving that she had been treated differently than other similarly situated individuals, or that she had been subjected to a hostile work environment. That is, after considering everything that happened to the Plaintiff, the jury found that she was not the subject of discrimination and found that she did not meet her burden on her equal protection claim. Therefore, any possible error would have been harmless.

Therefore, the Plaintiff's motion for a new trial on her retaliation claims is granted, but her motion for a new trial on her discrimination claims is denied.

### III. CONCLUSION

For the reasons stated above, the Plaintiff's motion is granted in part, and denied in part. It is granted to the extent that the Plaintiff will receive a retrial on her Title VII and NYSHRL retaliation claims. As to the retaliation claims, while the Court charged the jury only on the ultimate adverse employment act of termination, the Court should have charged the jury that they were to consider whether there was a causal connection between the Plaintiff's complaints and those other adverse employment actions.

It is denied to the extent that the Plaintiff does not receive a new trial on her Title VII, NYSHRL, SCHRL, Section 1981, or Section 1983 discrimination claims. Furthermore, as stated

above, the SCHRL does not provide for a private right of action, so the Plaintiff will not receive a new trial on her SCHRL retaliation claims.

The parties are directed to appear before the Court on December 4, 2017 at 9:00 a.m. for a conference to discuss the retrial of the Plaintiff's retaliation and *Monell* claims.

It is **SO ORDERED:**

Dated: Central Islip, New York

November 13, 2017

*/s/ Arthur D. Spatt*

ARTHUR D. SPATT

United States District Judge