FILED
CLERK
7/29/2019 4:07 pm
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

----------------------------------------------------------X

MELANIE YOUNG,

                     Plaintiff,

            -against-

TOWN OF ISLIP, ELIZABETH LORENZ, in her personal and official capacity, CAROL CHARCHALIS, in her personal and official capacity, and ROBERT FINNEGAN, in his personal and official capacity,

                     Defendants.

----------------------------------------------------------X

**MEMORANDUM OF DECISION & ORDER**
2:13-cv-04713 (ADS)(ARL)

**APPEARANCES:**

**The Law Offices of Frederick K. Brewington**
*Attorneys for the Plaintiff*
556 Peninsula Blvd
Hempstead, NY 11550
      By:    Frederick K. Brewington, Esq.,
               Cathryn Annette Harris-Marchesi, Esq., Of Counsel.

**William D. Wexler, Esq.**
*Attorney for the Defendants*
816 Deer Park Avenue
North Babylon, NY 11703

**SPATT, District Judge**:

        On February 23, 2017, a jury found that plaintiff Melanie Young (the "Plaintiff") did not prove, by a preponderance of the evidence, that defendants Town of Islip ("Islip"), Elizabeth Lorenz ("Lorenz"), Carol Charchalis ("Charchalis"), and Robert Finnegan ("Finnegan") (collectively, the "Defendants") discriminated against her on the basis of her race, or that they retaliated against her because of her complaints of discrimination. The Plaintiff brought her claims pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title

1

VII), 42 U.S.C. § 1983 ("Section 1983"), 42 U.S.C. § 1981 ("Section 1981"), the New York State Human Rights Law, N.Y. EXEC. LAW § 296 (the "NYSHRL"), and the Suffolk County Human Rights Law (the "SCHRL").

On November 13, 2017, the Court granted a motion for a new trial, pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P." or "Rule") 59(a), regarding the Plaintiff's Title VII and NYSHRL retaliation claims.

On October 2, 2018, the jury in the new trial issued a verdict in favor of the Defendants, finding that the Plaintiff did not engage in a protected activity and that the Defendants did not carry out the alleged adverse employment actions in retaliation for the Plaintiff's engagement in a protected activity.

Presently before the Court is another motion for a new trial by the Plaintiff pursuant to Rule 59(a). This time, the Plaintiff argues that the Court erred by characterizing the alleged protected activity as "making claim of racial discrimination" without mention of her complaints regarding the existence of a "hostile work environment."

For the following reasons, the Court denies the Plaintiff's motion.

## I. BACKGROUND

The Court will not engage in a complete recitation of all the facts adduced at the trial. The Court will discuss only those facts that are relevant to the instant motion. For additional information regarding the history and procedural background of the case, the Court refers the parties to its order granting the Plaintiff's motion for a new trial the first time around. ECF 77.

The Plaintiff alleged that the Defendants retaliated against her for making numerous complaints of discrimination. Relevant here, the Plaintiff complained verbally and in writing in the spring of 2009, October 30, 2009, and March 15, 2010. On April 2, 2010 she filed a notice of

claim with the Town of Islip regarding her intent to bring discrimination charges. On February 11, 2011, she filed a complaint with the New York State Division of Human Rights ("NYSDHR").

The verdict sheet instructed the jurors that the notice of claim and the complaint to the NYSDHR alleged claims of racial discrimination. With regard to the remaining complaints, the verdict sheet stated:

> The Plaintiff alleges that there were additional claims or demands made by the Plaintiff against the Defendants alleging racial discrimination. The Defendants contend that these additional facts were not describing alleged racial discrimination. You will now have to make the decision as to the following alleged demands to the Defendants.

ECF 105-1 at 26. The verdict sheet then asked: "[w]ere the following acts by the Plaintiff making a claim of racial discrimination?" followed by a listing of the spring 2009, October 30, 2009 and March 15, 2010 complaints. *Id.* at 26–27.

After this question, the verdict sheet stated: "The Plaintiff contends that the Defendants made an adverse employment decision against her in retaliation for her making and filing complaints of racial discrimination. You must determine whether the Plaintiff proved that the following acts were done by the Defendant in retaliation for the Plaintiff filing a charge of racial discrimination." *Id.* at 27. The verdict sheet then listed all of the alleged adverse employment actions, asking if each was "done to retaliate against the Plaintiff for making a claim of racial discrimination?" *Id.* at 27–28.

During the charge conference, the Plaintiff objected to asking the jurors in the verdict sheet whether her actions were "making a claim of racial discrimination." She sought to include additional language regarding her complaints claiming the existence of a hostile work environment. The following conversation occurred:

> MR. BREWINGTON: Yes. Yes, your Honor. As to the first section, Judge, the issue of you stated in number one: Were the following acts by plaintiff making a

claim of racial discrimination. While we do know that racial discrimination, we are alleging that racial discrimination did take place and did allege that, Ms. Young's actual documents refer to hostile work environment. And Judge, that language is consistent with what the statutes allow in terms of a way of proving or alleging racial discrimination. I would ask that it be hostile work environment/racial discrimination with regard to each of the places where you have racial discrimination.

THE COURT: No. This is a racial discrimination claim. Has nothing to do with hostile work environment.

MR. BREWINGTON: But Judge, the issue is not proving hostile work environment. The question is whether or not she alleged that and whether or not that is protected activity for which retaliation could arise. I believe the answer to that question would be yes . So if that is not -- Judge, if that is not there, which has been alleged throughout, that is not giving the jury, I believe, the full understanding of what the protections against retaliation are.

THE COURT: So you want me to say on the second line alleging hostile work environment and racial discrimination?

MR. BREWINGTON: Yes, Judge.

THE COURT: What do you say about that, Mr. Wexler?

MR. WEXLER: Judge, I oppose it. I think this cause of action is couched in retaliation. This is what we're retrying, retaliation charge. I objected about the whole race discrimination, but as we saw and the Court opined, as long as it merged, it did. So we have discrimination and retaliation .

THE COURT: I think it's just going to confuse the jury. Overruled. You have an exception.

ECF 105-1 at 2–3.

The Plaintiff moves for a new trial on the ground that the Court erred by overruling her objection to her proposed language in the verdict sheet.

## II. DISCUSSION

**A. THE LEGAL STANDARD.**

Rule 59 provides that "[t]he court may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at

4

law in federal court[.]" FED. R. CIV. P. 59(a). Grounds for granting a new trial include a verdict that is against the weight of the evidence, *Manley v. AmBase Corp.*, 337 F.3d 237, 245 (2d Cir. 2003), substantial errors in the admission or exclusion of evidence, *Stampf v. Long Island R.R. Co.*, 761 F.3d 192, 203 (2d Cir. 2014), prejudicial misconduct from counsel, *Pappas v. Middle Earth Condo. Ass'n*, 963 F.2d 534, 540 (2d Cir. 1992), and non-harmless errors in jury instructions, *United States v. Kozeny*, 667 F.3d 122, 130 (2d Cir. 2011), or verdict sheets, *Armstrong ex rel. Armstrong v. Brookdale Univ. Hosp. & Med. Ctr.*, 425 F.3d 126, 136 (2d Cir. 2005). A jury's verdict should "rarely be disturbed" and a motion for a new trial should be granted only if the court is convinced that the jury's verdict is "seriously erroneous or a miscarriage of justice." *Farrior v. Waterford Bd. of Educ.*, 277 F.3d 633, 635 (2d Cir. 2002) (per curiam); *see also Carroll v. Cty. of Monroe*, 712 F.3d 649, 653 (2d Cir. 2013).

**B. APPLICATION TO THE FACTS.**

The Plaintiff contends that the language in the verdict sheet regarding "racial discrimination" confused the jurors because her evidence of protected activity "sounded in a hostile work environment." ECF 104-1 at 3. According to the Plaintiff, the jurors believed the Plaintiff's "hostile work environment" complaints were beyond their consideration because the language in her complaints did not match the language in the verdict sheet. *Id.* at 4. Supposedly confirming her argument, the Plaintiff cites an *ex parte* communication from an unidentified member of the jury who "contacted Counsel for Plaintiff and explained that because Mr. Young's complaints in her email did not say 'discrimination' that the jury did not think they could consider her complaints that did say or reference 'hostile work environment.'" *Id.*

The Court does not agree that the verdict sheet confused the jury. "Protected activity" refers to actions "taken to protest or oppose statutorily prohibited discrimination." *Aspilaire v. Wyeth Pharm.*, Inc., 612 F. Supp. 2d 289, 308 (S.D.N.Y. 2009). To constitute a protected activity, the complaints at issue must describe treatment related to a protected characteristic rather than

5

"complaining merely of unfair treatment generally." *Id.* at 309. Abstract references to a "hostile work environment" standing alone cannot establish a protected activity; they must be tied to a protected characteristic, such as race, religion, gender, or age. *See Sullivan v. NYC Dep't of Investigation*, 163 F. Supp. 3d 89, 100 (S.D.N.Y. 2016) ("Importantly, plaintiff makes no claim that Telesford ever made any statements about plaintiff's age, race, gender, or religion. Thus, the complaint of 'discrimination' cannot be read as a complaint of unfair treatment based on protected status."); *Mayers v. Emigrant Bancorp, Inc.*, 796 F. Supp. 2d 434, 449 (S.D.N.Y. 2011) (finding complaint describing "disparate mistreatment and harassment" failed because it did not convey that the plaintiff was making a complaint of race, age or gender discrimination); *Krasner v. HSH Nordbank AG*, 680 F. Supp. 2d 502, 521–22 (S.D.N.Y. 2010) ("Krasner is correct that he need not have explicitly used the words 'discrimination' or 'gender' to afford his complaints protected-activity status. . . . When the conduct complained of, however, does not lend itself to a reasonable inference of unlawful discrimination, such 'magic words,' may be the only way to put the employer on notice that the employee believes himself to be complaining of discriminatory conduct.").

Thus, the verdict sheet could not have asked the jurors if the Plaintiff's complaints alleged a "hostile work environment," because it would have permitted the jurors to reach a conclusion precluded as a matter of law. Rejecting such language was especially important because the factual dispute for the jury to resolve was whether the complaints at issue raised issues of statutorily prohibited discrimination. Including broad "hostile work environment" language might have confused the jury even more, creating the impression that the plaintiff could recover for only general complaints of unfair treatment.

The Court also notes that the language in the verdict sheet encompassed hostile work environment claims. "Racial discrimination" is a broad term that includes various types of race-

based unlawful employment practices. A hostile work environment claim alleges a particular *form* of racial discrimination, namely, that an employer's workplace is so "discriminatorily hostile or abusive" that it "alter[s] the conditions of the victim's employment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367, 370, 126 L. Ed. 2d 295 (1993) (considering the definition of a discriminatorily 'abusive work environment' (also known as a 'hostile work environment') under Title VII"); *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006) (explaining that antidiscrimination laws protect employees from "various forms of discrimination, including hostile work environment and disparate treatment").

By asking the jury whether the Plaintiff's complaints made claims of racial discrimination, the verdict sheet by definition asked whether the Plaintiff raised race-based hostile work environment claims. The very language of the Plaintiff's objections confirms this conclusion *See* ECF 104-1 at 2 ("Ms. Young claimed primarily that the defendants retaliated against her in response to her complaints of discrimination that sounded in a hostile work environment *based upon her race*." (emphasis added)), 3 ("At trial, Ms. Young's evidence of protected activity sounded in a hostile work environment *based upon her race*[.]" (emphasis added)).

To the extent the Plaintiff objects that the verdict sheet omitted complaints of gender or disability discrimination, the Court notes that she waived this argument by failing to seek their inclusion in the verdict sheet. *See Jackson v. White Castle Sys., Inc.*, No. 15-cv-06378, 2017 WL 4737257, at *4 (E.D.N.Y. Oct. 19, 2017) ("To the extent Plaintiff is objecting to the verdict sheet and/or the jury instruction regarding proximate cause, such objections are waived as Plaintiff did not object to the instruction during trial"). During the charge conference, the Plaintiff only sought to include language regarding "hostile work environment" or "wrongful treatment" broadly. ECF

7

105-1 at 2–3. She made no mention of other potential protected characteristics invoked by her complaints.

Any such omission fails to provide grounds for a new trial due to the conclusory nature of the Plaintiff's argument. *See Carlson v. Parry*, No. 06-cv-6621, 2013 WL 5354517, at *11 (W.D.N.Y. Sept. 24, 2013) ("Carlson's conclusory assertions are insufficient to meet his burden of establishing that the verdict was either seriously erroneous or a miscarriage of justice."); *O'Connell v. Onondaga Cnty.*, 2013 WL 998598, *2 (N.D.N.Y.2013) ("Plaintiff simply casts his disagreement with the verdict in a vague and conclusory fashion, offering nothing more than general references to testimony and evidence in the record"). Her current motion only makes passing reference to the existence of any gender- or disability-based claims without any explanation of why the facts adduced at trial would warrant their inclusion in the verdict sheet. Indeed, she argues that her claims "primarily . . . sounded in a hostile work environment based upon race." ECF 104-1 at 2.

Finally, the jury's intent as to liability was clear and the record contains no evidence of confusion. The jury ruled against the Plaintiff on every pertinent question on the verdict sheet and asked no questions regarding the "racial discrimination" portion of the jury charge or any other questions conveying confusion. *See Green v. Groneman*, 634 F.Supp.2d 274, 277 (E.D.N.Y.2009) (Spatt, J.) (denying motion for new trial on grounds of juror confusion when jury submitted no questions conveying confusion, and nothing indicated that the verdict was inconsistent or indicative of juror confusion); *Kaplan v. Cty. of Nassau*, No. 11-cv-3853, 2015 WL 4645331, at *11 (E.D.N.Y. Aug. 4, 2015) (denying motion for new trial where "the jury's intent as to liability was clear, and the verdict sheet is not inconsistent and presents no evidence of confusion as to the law the jurors were expected to apply").

The Court also specifically instructed the jurors that the Plaintiff engaged in a protected activity by filing a notice of claim on April 2, 2010 and submitting a complaint to the NYSDHR on February 11, 2011. The jury nonetheless issued a verdict in favor of the Defendants regarding those claims, finding no causal connection between the complaints and the alleged adverse employment action. Therefore, with reasonable certainty, none of the Plaintiff's desired changes would have altered the outcome of the verdict.

The only "evidence" supporting a different conclusion is the Plaintiff's representation that a juror contacted her attorney about the panel's confusion. This allegation is insufficient to reverse the jury's verdict. She proffers no evidence to substantiate her claim of this interaction, not even an affirmation in her attorney's declaration in support of her motion. The Court will not overturn a unanimous jury verdict based on an uncorroborated one-sentence assertion of this kind. Even were such evidence before the Court, it would be wholly inadmissible. *See* Fed. R. Evid. 606(b) ("During an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment. The court may not receive a juror's affidavit or evidence of a juror's statement on these matters."); *Munafo v. Metro. Transp. Auth.*, 277 F. Supp. 2d 163, 175–76 (E.D.N.Y. 2003) ("Although the affidavits of jurors . . . attempt to circumvent this restriction by professing to represent the opinion of each and every juror, the affiants are not competent to testify as to the intentions of the other juror.").

Therefore, the Court finds the Plaintiff failed to establish that the jury's verdict was seriously erroneous or a miscarriage of justice.

## III. CONCLUSION

For the foregoing reasons, the Court denies the Plaintiff's motion for a new trial pursuant to Rule 59(a). The Clerk of the Court is respectfully directed to close this case.

It is **SO ORDERED**:

Dated: Central Islip, New York

July 29, 2019

<u>   /s/ Arthur D. Spatt     </u>

ARTHUR D. SPATT

United States District Judge